# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN M. WILSON, | 1:07-CV-01317 OWW GSA HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| KATHY MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction on April 3, 1981, by jury trial of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit A. The allegation that Petitioner had used a firearm during commission of the offense was found to be true. Id. Petitioner was sentenced to serve an indeterminate term of 17 years to life with the possibility of parole. Id. His minimum eligible parole date was March 28, 1990. See Answer, Exhibit B at 1.

On August 28, 2006, a subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id. at 83.

Petitioner then sought relief in the state courts. He filed a petition for writ of habeas corpus in the Tulare County Superior Court on March 22, 2007. See Answer, Exhibit C. The superior court denied the petition on March 26, 2007, in a reasoned decision. See Answer, Exhibit D. He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on April 18, 2007. See Answer, Exhibit E. The petition was summarily denied on May 17, 2007. See Answer, Exhibit F. On May 31, 2007, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit G. The petition was denied on August 8, 2007. See Answer, Exhibit H.

Petitioner filed the instant petition for writ of habeas corpus in this Court on September 10, 2007. He claims his due process rights were violated when the Board denied him parole. Respondent filed an answer to the petition on February 13, 2008, and Petitioner filed a traverse on March 13, 2008.

## FACTUAL BACKGROUND[1]

On September 12, 1979, Petitioner and Felicito Dominguez met in Visalia at about 7 or 8 in the evening and decided to ride around and drink beer together. After cruising for several hours in Dominguez's car and drinking beer they finally arrived at the Northside Community Center about 10 or 11 o'clock where they continued drinking. Several people joined them. One of them, Michael Gravinno, told the others he had been on the other side of the park and saw Ramiro Gonzalez there. Dominguez testified Petitioner did not like Gonzalez because he was a snitch. Before this day, Petitioner had been warned Gonzalez was after him and had a gun. Gonzalez had some history of violence with a firearm. Petitioner, Dominguez, and Arthur Aguirre then left the Center, obtained some beer, and at Petitioner's request stopped at Aguirre's

---

[1] This summary is derived from the facts set forth in the parole hearing which was taken in turn from the appellate court's decision on direct appeal of the underlying conviction. See Answer, Exhibit B at 16-18.

house where Petitioner borrowed a shotgun and returned to the Center. About five minutes after they returned, Gonzalez and Catherine Martinez walked toward Dominguez's truck and Petitioner stepped out and pointed the shotgun at them. He told Gonzalez either to empty his pocket or take his hands out of his pocket. Petitioner testified he felt Gonzalez may be carrying a gun. From a distance of three feet Petitioner then fired a shot which hit Gonzalez in the stomach. Gonzalez turned and ran and Petitioner fired more shots, two of them hitting Gonzalez's back, and the last from a distance of about 15 to 20 feet. Petitioner said he fired the first shot because he thought Gonzalez had a gun and he fired the other shots because he was still afraid that Gonzalez was armed. Gonzalez died of the gunshot wound to his stomach. After the shooting Petitioner got into his pickup truck and Dominguez took him home.

## DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

1  The instant petition is reviewed under the provisions of the Antiterrorism and Effective
2 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
3 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
4 adjudication of the claim "resulted in a decision that was contrary to, or involved an
5 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
6 of the United States" or "resulted in a decision that was based on an unreasonable determination
7 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
8 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

9  As a threshold matter, this Court must "first decide what constitutes 'clearly established
10 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
11 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
12 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
13 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
14 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
15 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

16  Finally, this Court must consider whether the state court's decision was "contrary to, or
17 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
18 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
19 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
20 Court on a question of law or if the state court decides a case differently than [the] Court has on a
21 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
22 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
23 state court identifies the correct governing legal principle from [the] Court's decisions but
24 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
25 413.

26  "[A] federal court may not issue the writ simply because the court concludes in its
27 independent judgment that the relevant state court decision applied clearly established federal
28 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

4

1    A federal habeas court making the "unreasonable application" inquiry should ask whether the
2    state court's application of clearly established federal law was "objectively unreasonable." Id. at
3    409.
4           Petitioner has the burden of establishing that the decision of the state court is contrary to
5    or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
6    Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
7    states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
8    state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
9    Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
10          AEDPA requires that we give considerable deference to state court decisions. The state
11   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
12   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
13   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
14          As noted above, Petitioner's claims were presented in a petition for writ of habeas corpus
15   to the Tulare County Superior Court. See Answer, Exhibit C. The superior court denied the
16   claims in a reasoned opinion. See Answer, Exhibit D. Petitioner then presented his claims to the
17   appellate court and to the California Supreme Court. Both petitions were summarily denied. See
18   Answer, Exhibits E-H. The California Supreme Court, by its "silent order" denying review of the
19   superior court's decision, is presumed to have denied the claims presented for the same reasons
20   stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).
21   II.    Review of Petition
22          A parole release determination is not subject to all the due process protections of an
23   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
24   also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
25   (explaining that due process is flexible and calls for procedural protections that particular
26   situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
27   the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
28   even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. Petitioner received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) An unstable social history; 3) An escalating pattern of criminal behavior; 4) Institutional behavior; and 5) A complete lack of parole plans. Petitioner argues the Board's decision is unsupported by the evidence, and the Board's continued reliance on the commitment offense and unstable social history as factors violates his due process rights because they are factors that can never be changed. Nevertheless, a review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself, and the Board determined the offense was committed in an especially heinous, atrocious and cruel manner. First, pursuant to § 2402(c)(1)(B), the Board found the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. See Answer, Exhibit B at 75-76. In support of this finding, the Board noted that Petitioner had left a park, obtained a shotgun, and returned. At that point, he spotted the victim and motioned him over. He then revealed the shotgun and ordered the victim to remove any objects from his pockets. When the victim went to comply, Petitioner discharged his firearm, fatally wounding him in the stomach. When the victim turned and attempted to flee, Petitioner fired two more shots at the victim's back. In light of this record, the Board's finding is well-supported. The Board further noted that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering pursuant to § 2402(c)(1)(D). See Answer, Exhibit B at 75. The Board relied

on the fact that Petitioner had already mortally wounded the victim, yet he continued to wound him further with additional blasts from his shotgun while the victim attempted to flee. The Board also found the motive to be very trivial in relation to the offense under § 2402(c)(1)(E). See Answer, Exhibit B at 75-76.  In support of this finding, the Board noted Petitioner intended to kill the unarmed victim because he believed the victim was a snitch. Given the facts of the case, the state court's finding that the offense was committed in an especially heinous, atrocious and cruel manner is not unreasonable.

Next, pursuant to § 2402(c)(2) and (3), the Board determined Petitioner's previous record of violence and his history of unstable and tumultuous relationships with others tended to indicate unsuitability. See Answer, Exhibit B at 76. The Board noted that Petitioner's father and brother were killed when he was very young. Petitioner also had two failed marriages. Moreover, he had an escalating pattern of criminal behavior starting from a young age. He had previously committed an assault with a deadly weapon. See Answer, Exhibit B at 45. He was later convicted of a first degree murder. Id. at 46. Upon being paroled, he was then involved with receiving stolen property. Id. Then, he committed the instant murder. Under § 2402(c)(6), the Board also noted Petitioner's negative institutional behavior. Petitioner continued his criminal behavior after being committed to state prison. He sustained seven serious CDC-115 rules violations with the last one occurring in 1985. He also sustained twenty-one CDC-128B counseling chronos with the last one being in 2004. Given this record, the state court reasonably determined the Board's findings were supported by some evidence.

Finally, the Board found Petitioner's parole plans to be non-existent. See Answer, Exhibit B at 78. The Board stated Petitioner had no letters of support, and he had no employment plans. The Board further noted that the previous panel had recommended Petitioner make an effort to secure appropriate parole plans; however, he had failed to do anything in that regard within the past two years.

The Board also considered various circumstances which tended to show suitability pursuant to § 2402(d). See Answer, Exhibit B at 76-78. Petitioner earned an A.A. degree while in prison. He had obtained vocations in appliance repair and graphic arts. He had received laudatory

chronos for his work. He had remained disciplinary free during the most recent review period. The most recent psychological evaluation was supportive of release. Nevertheless, the Board concluded that the nature and gravity of Petitioner's offense, his unstable social history, his previous record of violence, and his total lack of parole plans demonstrated an unreasonable risk of danger to the public if released. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

Petitioner's claim that the Board improperly relied on immutable factors is without merit. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. As discussed above, the Board did not merely consider the underlying offense. The Board also considered Petitioner's negative behavior while in prison and his complete lack of parole plans.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.	The Petition for Writ of Habeas Corpus be DENIED; and
2.	The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 24, 2008**           **/s/ Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE